IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HIRAM LEBRON,

    Petitioner,               No. CIV S-02-1280 GEB JFM P

  vs.

S. GARCIA, Warden, et al.,

    Respondents.          FINDINGS AND RECOMMENDATIONS
_____/

        Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1998 conviction on charges of involuntary manslaughter in violation of California Penal Code § 192 and assault on a child under the age of eight resulting in death in violation of California Penal Code § 273ab, and the sentence of twenty-five years to life in prison imposed thereon in February 1999. Petitioner claims in his amended petition, filed December 13, 2002, that his prison sentence violates the Eighth Amendment, and that California Penal Code § 273ab violates due process.

/////

/////

FACTS[1]

The convictions in this case arose from the death of 11-month-old Thalia Escoto (Thalia), the daughter of [petitioner] Hiram Lebron's (Lebron) live-in fiancée, defendant Eva Valdez (Valdez).

. . . .

On May 17, 1997, Lebron, who was watching 11-month-old Thalia while Valdez was at work, brought Thalia, unconscious, into the pediatric emergency room at U.C. Davis Medical Center. Appearing panicked and concerned, Lebron pointed to the right side of Thalia's head that told a nurse that she had fallen. Medical intervention failed to save Thalia's life.

An autopsy disclosed that Thalia had suffered a depressed-type skull fracture, which is typically caused by a blow. Thalia also had a linear skull fracture; various forces, such as blows or falls, can cause linear fractures. According to Dr. Donald Henrikson, the pathologist who performed the autopsy, a "significant amount of force" would be necessary to produce such injuries, such as the force from a car accident, or from a fall of more than 10 feet, or from a deliberate assault.

Henrikson observed injuries to Thalia's brain and hemorrhages to her eyes, symptoms typical of the violent shaking associated with shaken infant syndrome. He also observed numerous contusions scattered about Thalia's body.

Henrikson concluded that Thalia died as a result of blunt force impact and shaking – a homicide. Evidence of both fresh and older injuries suggested a pattern of continuing abuse. Dr. Claudia Greco, a neuropathologist, basically concurred with Henriksen's findings.

Evidence was presented of Lebron's involvement, or possible involvement, in various injuries suffered by Thalia, including a scalding burn, a broken arm, a black eye, and bumps and bruises to Thalia's head and body. These injuries took place over a three-month span, which roughly coincided with the period during which Lebron and Valdez lived together. Innocent explanations were offered for most of these injuries.

(People v. Valdez, et al., slip op. at 2, 3-4.)

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Valdez, et al., No. C031612 (Jan. 30, 2001), a copy of which is attached as Exhibit A to Respondents' Answer, filed March 24, 2003.

## ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams</u>, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).

II. Petitioner's Claims

    A. Constitutionality of California Penal Code § 273ab

        Petitioner's first claim is that California Penal Code § 273ab violates due process by authorizing imposition of punishment equivalent to that imposed on a first degree murder conviction without requiring proof of the mental state required for a first degree murder conviction. Pointing to the fact that he was acquitted of second degree murder and convicted only of involuntary manslaughter and relying on In re Winship, 397 U.S. 358 (1970), Mullaney v. Wilbur, 421 U.S. 684 (1975) and Patterson v. New York, 432 U.S. 197 (1977), petitioner argues that § 273ab violates his right to due process because it allowed imposition of the punishment for first degree murder without proof of the mens rea required to support a murder conviction.

        The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. Relying on another state court of appeal decision, People v. Albritton, 67 Cal.App.4th 647 (1998), the state court rejected this claim on the ground that:

> Section 273ab is a very serious felony. It requires that a particularly vulnerable victim – a cared-for child under eight years of age – die at the hands of his or her caretaker; the caretaker must intentionally assault the child using force that a reasonable person would believe was likely to result in great bodily injury, and such force must result in the child's death. [Footnote omitted.] Under this accepted view of section 273ab is much higher than negligence and can be rationally compared with child abuse homicide or murder in terms of punishment. [Footnote omitted.]

(People v. LeBron, slip op. at 39.)

        The state legislatures have broad authority to define crimes and impose punishments thereon. See, e.g., Brecht v. Abrahamson, 507 U.S. 619, 635 (1993) (quoting Engle v. Isaac, 456 U.S. 107, 128 (1982)). The Due Process Clause prevents only imposition of punishments based on "arbitrary" distinctions. See Chapman v. U.S., 500 U.S. 453, 464-65 (1991).

/////

> When a State's power to define criminal conduct is challenged under the Due Process Clause, we inquire only whether the law "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Patterson, 432 U.S., at 202, 97 S.Ct., at 2322 (internal quotation marks omitted).

Montana v. Egelhoff, 518 U.S. 37, 58 (1996) (Ginsburg, J., concurring).

The California statute that imposes on a caretaker who intentionally assaults a child with force likely to cause great bodily injury thereby causing the child's death the same punishment imposed on those convicted of first degree murder is not based on the type of arbitrary distinction that would run afoul of the Due Process clause, nor does it offend fundamental principles of justice.  The state court's rejection of petitioner's first claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent.  Petitioner's first claim for relief should be denied.

    B.  Eighth Amendment

Petitioner's second claim is that his sentence of twenty-five years to life in prison violates the cruel and unusual punishment clause of the Eighth Amendment.  Petitioner contends that his conduct was not more than criminally negligent and that his sentence is therefore disproportionate to the offense.

As noted above, the federal habeas corpus statute provides in relevant part that habeas corpus relief is unavailable for any claim denied on the merits in State court "unless the adjudication of the claim-- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  In Lockyer v. Andrade, supra, the United States Supreme Court made clear that, in the context of an Eighth Amendment challenge to a prison sentence, the "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."

1 Andrade, 538 U.S. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v.
2 Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).  The
3 Andrade Court concluded that two consecutive 25-years-to- life sentences with the possibility of
4 parole, imposed under California's three-strikes law following two petty theft convictions with
5 priors, did not amount to cruel and unusual punishment.  Id. at 77; see also Ewing v. California,
6 538 U.S. 11 (2003) (holding that a sentence of 25 years to life imposed for felony grand theft
7 under California's three-strikes law did not violate the Eighth Amendment).  "Outside the context
8 of capital punishment, successful challenges to the proportionality of particular sentences have
9 been exceedingly rare."  Rummel, 445 U.S. at 272.

The Supreme Court has cautioned federal courts to be "'reluctan[t] to review legislatively mandated terms of imprisonment.'"  Hutto v. Davis, 454 U.S. 370, 374 (1982) (quoting Rummel, 445 U.S. at 274).  "Generally, as long as the sentence imposed upon the defendant does not exceed statutory limits, [a federal court] will not overturn it on eighth amendment grounds."  United States v. Zavala-Serra, 853 F.2d 1512, 1518 (9th Cir. 1988).  See also Belgarde, 123 F.3d at 1215; United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).  "[A] sentence within the limits set by a valid statute may not be overturned on appeal as cruel and unusual punishment unless the sentence is so 'grossly out of proportion to the severity of the crime' as to shock our sense of justice."  United States v. Cupa-Guillen, 34 F.3d 860, 864 (9th Cir. 1994) (quoting United States v. Vega-Mejia, 611 F.2d 751, 753 (9th Cir. 1979)) (citing United States v. Washington, 578 F.2d 256, 258-59 (9th Cir. 1978)).

Petitioner's sentence is not one of those "exceedingly rare" sentences fitting within the contours of the "gross disproportionality" principle, and thus does not constitute cruel and unusual punishment.  The state's court rejection of this claim was neither contrary to nor an unreasonable application of U.S. Supreme Court Eighth Amendment precedent.  Petitioner's second claim for relief should be denied.

/////

1           For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's
2    application for a writ of habeas corpus be denied.
3           These findings and recommendations are submitted to the United States District
4    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days
5    after being served with these findings and recommendations, any party may file written
6    objections with the court and serve a copy on all parties.  Such a document should be captioned
7    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
8    shall be served and filed within ten days after service of the objections.  The parties are advised
9    that failure to file objections within the specified time may waive the right to appeal the District
10   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
11   DATED: October 21, 2005.

UNITED STATES MAGISTRATE JUDGE

12
lebr1280.157